# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **NAKIA ECHOLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   2:12-cv-01718-VEH-HGD |
| | ) |
| **JOSEPH NEWMAN,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

On May 16, 2011, the plaintiff, Nakia Cortez Echols ("Mr. Echols"), was an inmate at the William E. Donaldson Correctional Facility ("Donaldson"), in Bessemer, Alabama. Correctional Officers Joseph Newman ("Officer Newman"), Brian Robinson ("Officer Robinson"), and Byron Jones ("Officer Jones") were on duty at Donaldson on May 16, 2011. At approximately 11:00 p.m., Mr. Echols ran out of his cell after failing to comply with directives given to him by Officers Robinson and Newman. Both officers chased Mr. Echols. Officer Robinson pursued Mr. Echols directly; Officer Newman ran in the opposite direction to cut Mr. Echols off. Mr. Echols ran down the second tier balcony, down the stairs to the first tier, across the day room located on the first tier, and back up the stairs to the second tier at the

opposite end of one side of C Block. Mr. Echols testified that he saw that he was pinned between the two officers, and lay down to surrender. Mr. Echols testified that Officer Newman came over to him and pulled him to his feet by his shirt and pants. Mr. Echols testified that he and Officer Newman "tusseled," and then Officer Newman threw him over the tier railing head first, seriously injuring his face, wrist, and hip. Officers Newman and Robinson testified that Mr. Echols climbed over the tier railing to elude them, and fell headfirst. His injuries are not disputed. Mr. Echols has sued Officer Newman for damages under 42 U.S.C. § 1983 alleging that Officer Newman was acting under color of law and exerted excessive force.

The case proceeded to a non-jury trial. Mr. Echols acted *pro se*. Upon consideration of the evidence and testimony presented, and the arguments of counsel and Mr. Echols, the following findings of fact and conclusions of law are issued in accordance with Federal Rule of Civil Procedure 52(a)(1) in support of the Court's determination that Mr. Echols has failed to prove his case by a preponderance of the evidence and therefore is not entitled to recover from Officer Newman.

## I. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

Mr. Echols filed this action against Warden Cheryl Price, Warden Gary Hetzel, Deputy Warden Chris Gordy, Robinson, and Newman. Pursuant to 42 U.S.C. § 1983, Mr. Echols alleged that these defendants deprived him of rights accorded to him by

the United States Constitution. On November 19, 2013, the undersigned adopted the report and recommendation of Magistrate Judge Harwell G. Davis, III and dismissed all of Mr. Echols's claims except his claim against Officer Newman for excessive force/cruel and unusual punishment. (Docs. 15 & 16). On February 19, 2015, the undersigned adopted the report and recommendation of Magistrate Judge Davis and denied Officer Newman's motion for summary judgment. (Docs. 25 & 28). The case proceeded to trial against Officer Newman on that claim.

## II. TRIAL EVIDENCE AND FINDINGS OF FACT

On May 16, 2011, Mr. Echols was a prisoner housed in cell number 26 of "C Block" at Donaldson. That night, between 10:30 and 11:00 pm,[1] Officer Robinson, the correctional officer assigned to C Block as a "rover," performed a "bed check" or "bed roster" on Mr. Echols. The process involves the rover going to the inmates' cells individually and checking their name and AIS number to ensure that each particular individual is in his cell before locking down for the night. During bed roster, no inmate is allowed to be out of his cell. After bed roster is complete, some inmates, who are assigned cleaning duties, are allowed to exit their cells for that purpose.

As Officer Robinson was checking Mr. Echols's cell, he noticed an obstruction inside the door locking mechanism which prevented Mr. Echols's cell door from

---

[1] Mr. Echols testified that it was "something to 11:00 or close to 11:00."

locking. Officer Robinson attempted to unblock the obstruction. Officer Robinson then moved on to other cells and completed his bed check on that side of C block. Officer Robinson then returned to Mr. Echols's cell and had the door "rolled open," which is the prison's term for mechanically having the door opened by an officer in a separate location called the "cube"–a clear, cube-shaped enclosure which overlooks C Block.[2] As the door opened, Mr. Echols jumped into his bed and stuck his hand into his pants.[3] Officer Robinson immediately began to accuse Mr. Echols of having contraband, and directed Mr. Echols to give it to him. Mr. Echols denied having any contraband. After about 3-4 minutes, during which Officer Robinson made several such directives and Mr. Echols continued to refuse, Officer Robinson called over the radio for the defendant, Officer Newman, to come to cell 26 to assist him.[4]

---

[2] It also overlooks D Block–another part of the prison which is connected to C Block.

[3] Officer Robinson testified that this is what occurred. Mr. Echols testified that he was already lying in his bed at the time, was "startled" when the door opened, and then turned quickly in his bed to see who was entering. The court finds Mr. Echols's testimony on this matter not credible in light of the facts that: Mr. Echols's testimony that he was never ordered to participate in a strip search was impeached by his deposition at trial; virtually undisputed evidence showed that Mr. Echols, during the later chase, slid contraband (specifically, a cell phone) under the door of cell 44; and his testimony that he may have removed his shirt directly contradicted his testimony that Officer Newman picked him up by his shirt and pants before Officer Newman threw him over the tier rail.

[4] Officer Byron Jones testified that he was working the cube that night. His testimony established that two officers are assigned at one time as rovers for both C and D Blocks. One rover works one block, and one works the other. The testimony of Officer Jones established that only Officer Robinson would have been on C Block at the time of this incident until he called for Officer Newman, who would have been on D Block until he was called.

It took Officer Newman about a minute to arrive at Mr. Echols's cell. At this time, both officers were standing in the doorway of Mr. Echols's cell. When Officer Newman arrived, Officer Robinson told Officer Newman what the situation was, and Officer Newman asked Mr. Echols to turn over to Officer Robinson whatever contraband Mr. Echols had. Mr. Echols again stated that he had no contraband. Mr. Echols testified that Officer Newman was a bigger man than he was and that he felt threatened by the officers.

The officers had Mr. Echols's cell partner exit the cell. Officer Robinson then ordered Mr. Echols to participate in a strip search. Although Mr. Echols did not initially comply with that command, after Officer Robinson gave the command two or three more times, Mr. Echols started the strip search by removing his shirt and shoes; then stopped, leaving his pants on.[5] At that time, Mr. Echols became more verbally aggressive, and moved toward the cell door. Officer Newman placed his hand on Mr. Echols's chest and told him to stop. Mr. Echols then attempted to hit Officer Newman with his fist.

At that point, Officer Robinson reached for a "chemical agent" called "Sabre

---

[5] On cross examination, Mr. Echols denied ever being ordered to perform a strip search. The court finds this testimony not credible in light of the fact that Mr. Echols was impeached with his deposition, when he stated that he was ordered to take off his shirt, and by his trial testimony, when he stated he may have taken off his shirt.

Red" that correctional officers at Donaldson used at the time. Officer Robinson testified that it was similar to pepper spray. He attempted to spray, and may have sprayed, Mr. Echols, but he accidentally sprayed Officer Newman as well, causing Officer Newman to become temporarily incapacitated.

Mr. Echols then pushed past Officer Newman and ran out of his cell and into C Block with Officer Robinson giving chase.[6] Mr. Echols led Officer Robinson on a chase along the walkway on the top tier, down a flight of stairs to the bottom floor of C Block, across the floor (what the witnesses referred to as the "day room floor"), and up another flight stairs to return again to the top tier of C Block near cell number 48. Mr. Echols then ran across the top tier walkway, with Officer Robinson in pursuit behind him, when he slowed down slightly, and, while still moving, bent over and slid something under the door of cell 44 and then continued to run. Officer Robinson stopped chasing Mr. Echols and had Officer Jones open cell 44 so that Officer Robinson could secure the item Mr. Echols had slid under the door of that cell.[7]

After Officer Newman had recovered sufficiently from the chemical spray, he joined in the effort to apprehend Mr. Echols. By the time that Mr. Echols had slid the cell phone into cell 44, Officer Newman was running up the stairs near cell

---

[6] C Block has two floors, or "tiers." Cell 26 was on the top tier.

[7] Testimony from the prisoners housed in cell 44 established that Mr. Echols slid a cell phone under the door during the chase.

37–directly in front of Mr. Echols. At that time, Mr. Echols, somewhere between cells 38 to 41 on the top tier, began to climb over the top tier railing, which is about 43 inches high. As he straddled the railing, he slipped and fell to the floor below.[8] No one was within 100 feet of Mr. Echols as he began to climb the railing. As a result of the fall, Mr. Echols sustained the injuries he complained of.

### III. CONCLUSIONS OF LAW

Section 1983 provides a vehicle for bringing claims for constitutional violations committed under color of state law. To prevail, Mr. Echols must demonstrate both that Officer Newman deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law. *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir.1998). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001) (quotation omitted).

The issue of whether Officer Newman acted under color of state law is not

---

[8] Mr. Echols testified that he attempted to "surrender" by laying down on the floor, but that Officer Newman charged him, told him that he was going to kill him, and picked him up off the floor by his shirt and pants. Mr. Echols testified that, as Officer Newman picked him up off the floor and they were "tussling," Officer Newman tried to slam him and threw him over the rail. The court finds this testimony not credible in light of the fact that both Officers Robinson and Newman testified that Mr. Echols fell from the rail on his own, and none of the inmate witnesses saw Officer Newman throw Mr. Echols from the rail.

contested. Nor does Officer Newman argue that, under Mr. Echols's version of the facts, Officer Newman did not violate Mr. Echols's constitutional right to be free from cruel and unusual punishment. Finally, Officer Newman does not dispute the injuries that Mr. Echols testified he sustained. Thus, the issue for this court to decide is, "What happened?"

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An excessive force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." *Thomas v. Bryant*, 614 F.3d 1288, 1305 (11th Cir.2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (other citations omitted).

The Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, 4) any efforts made to temper the severity of the response, and 5) the extent of the injury suffered by the inmate. *Hudson v. McMillian*, 503 U.S. at 7.

The undersigned credits the testimony of Officer Newman that he did not throw Mr. Echols over the second tier railing. The only testimony that supports Mr. Echols's version is that given by Mr. Echols himself and the speculative testimony of inmates who admittedly <u>did not see</u> Officer Newman touch Mr. Echols, much less see him throw him over the railing. While an inmate did testify that he saw Mr. Echols lying down (before he went over the railing), even that witness did not testify that he saw Officer Newman close to, much less touch, Mr. Echols. In light of the fact that Mr. Echols's repeatedly testified that Officer Newman picked him up by his shirt and pants (before throwing him over the railing) in direct contradicted of Mr. Echols's testimony that he may have taken off his shirt (before he ran out of his cell), together with the testimony of Officer Newman that Mr. Echols took off his shirt and shoes (before he ran out of his cell), the court finds Mr. Echols's version of the facts not credible.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED AND ADJUDGED** that plaintiff Nakia Cortez Echols has failed to show that defendant Joseph Newman used excessive force against him. Accordingly, **JUDGMENT** is hereby entered in favor of Joseph Newman. Mr. Echols shall take nothing and his claim is hereby **DISMISSED WITH PREJUDICE**.

**DONE** this the 29th day of July, 2015.

                                                **VIRGINIA EMERSON HOPKINS**
                                                United States District Judge